# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| PHILIP V EBERT,<br><br>Plaintiff,<br><br>v.<br><br>SECURA INSURANCE,<br><br>Defendant. | Case No. 4:19-CV-00817 JCH |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Compel pursuant to Federal Rule of Civil Procedure 26 (ECF No. 29) and Plaintiff's Motion for Extension of Plaintiff's Expert Disclosure Deadline. (ECF No. 31). The matters are fully briefed and ready for disposition.

## DISCUSSION

Plaintiff's cause of action arises out of a motor vehicle collision that occurred on or about October 28, 2015. Plaintiff was driving a dump truck for Schaefer Hauling, Inc. when he was struck by a vehicle driven by Gregory Newlon. Mr. Newlon's insurance company tendered its policy limits to the injured parties in the amount of $16,666.67 each. Schafer Hauling, Inc. is insured by Defendant Secura Insurance. Plaintiff seeks underinsured motorist coverage in this case. Plaintiff asks the Court to compel a response to Interrogatories Nos. 4, 5, 13, 14, 16, 17 and Requests for Production Nos. 1, 6-9, 15, and 16, and requests that the Court compel the Defendant to turn over its privilege log in this case. The Interrogatories and Requests specifically state:

> Interrogatory 4: State whether you have any photographs of the vehicles involved in the occurrence described in Plaintiff's Petition and the following: (a) [s]tate the name and address of the person presently having control or custody of each photograph; and, (b) [a]ttach copies of said photos to your answers.

Interrogatory 5: Are you aware of any statement made by Plaintiff regarding the occurrence mentioned in the Petition, whether oral, written or recorded in any way, including but not limited to, a stenographic, mechanical, electrical, audio, video, motion picture, photograph or other recording, or transcription thereof, and if so, please state the following: (a) [d]ate, place and time taken; [n]ame and address of the person or persons connected with taking it; (c) [n]ames and addresses of all persons present at the time it was taken; [w]hether the statement was oral, written, shorthand, recorded, taped etc.; € [w]as it signed; (f) names and addresses of the persons or organizations under whose direction and upon whose behalf it was taken or made; and (g) [p]lease attach an exact copy of the original of the statement, interview, report, film or tape to your answers to these interrogatories; if oral please state verbatim the contents thereof.

Interrogatory 13: List the names, addresses, and job titles of all employees and agents of Defendant involved in evaluating Plaintiff's underinsured motorist benefits claims and all such individuals involved in ultimate decisions regarding payment of such benefits to Plaintiffs.

Interrogatory 16: State whether Defendant conducted any investigation into whether Defendant Garry Davis[1] was an underinsured motorist as defined by Defendant's insurance policy at issue. If so, state: (a) [t]he names and address of each person performing such investigation; (b) [t]he date the investigation was performed; and (c) the determination ultimately made.

Interrogatory 17: State whether or not statements have been obtained from any witnesses with regard to the facts or circumstances surrounding the occurrence at issue and, if so state the following: (a) [t]he names, addresses and employers of persons whose statements were obtained; (b) [t]he date, time, and place of the taking of each statement; (c) [n]ames and addresses of all persons present at the time each statement was taken; (d) [w]as the statement oral, written or recorded? (e) Was it signed? (f) Names and addresses of persons organizations under whose direction and upon whose behalf each statement was taken; and (g) [n]ame, addresses, employer, and job title of the person presently having control or custody of each statement.

> Answer: Defendant objects to this Interrogatory because it seeks information protected from discovery under the work-product doctrine. Defendant's investigation, evaluation, and decision-making processes with regard to Plaintiffs claims, including any photographs, were undertaken in anticipation of and in preparation for litigation. See Fed. R. Civ. P. 26(b); *State ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. O'Malley*, 898 S.W.2d 550, 552-53 (Mo. banc 1995). An insurer's file for and actions taken on a first-party claim, including its investigations, evaluations, and decision-making processes with respect to whether coverage is or may be available, the claimant insured's damages, or otherwise, are work product and are

---

[1] The Court and Defendant, upon information and belief replace Defendant Garry Davis with Gregory Newlon. (ECF No. 29-1, at 8).

protected from discovery. See generally *State ex rel. State Farm Mut. Auto. Ins. Co. v. Keet*, 601 S.W.2d 669 (Mo. Ct. App. 1980); *State ex rel. Safeco Nat'l Ins. Co. of Am. v. Rauch*, 849 S.W.2d 632 (Mo. Ct. App. 1993).

Defendant also objected to Interrogatories No. 13 and 16 on the basis of attorney-client privilege and that it is beyond the scope of discovery; that it is overly broad and seeks information not relevant or reasonably calculated to leaf to the discovery of admissible evidence.

Interrogatory 14: State in detail the basis of Defendant's refusal to pay underinsured motorist benefit to Plaintiffs in this case.

Answer: Defendant denies that it refused to pay underinsured motorist benefits to Plaintiff. Defendant made several offers to pay underinsured motorist benefits pursuant to the terms, conditions, and exclusions of the policy which were rejected by Plaintiff.

(ECF No. 29-1).

Request for Production 1: All photographs taken of the vehicles, persons and scene involved in the subject wreck mentioned in Plaintiff's Petition;

Request for Production 6: Documents that are identified in, relating to, or relied upon in formulating your answers to any of Plaintiff's Interrogatories to Defendant;

Request for Production 7: Transcripts, recordings, and/or summaries of statements from any person stating or claiming to have facts relevant to the subject motor vehicle collision and/or Plaintiff's injuries obtained by or available to Defendant before litigation;

Request for Production 8: Defendant's entire pre-litigation claim file and all claims documents regarding the subject wreck and Plaintiff's claims;

Request for Production 9: All pre-litigation Correspondence to or from Plaintiff, Schaefer Hauling or anyone else regarding this claim and/or the subject insurance policy;

Request for Production 15: All electronic evaluations and electronic claims log regarding the claim arising from the subject motor vehicle collision;

Request for Production 16: All pre-litigation correspondence between Defendant and any third-party, including but not limited to Plaintiff, consultant and/or law firm, regarding Plaintiff's subject underinsured motorist benefits claim

Response: Defendant objects to this Document Request because it seeks documents protected from discovery under the work-product doctrine. Defendant's investigation, evaluation, and decision-making processes with regard to Plaintiff's claims, including any photographs, were undertaken in anticipation of and in preparation for litigation. See Fed. R. Civ. P. 26(b); *State ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. O'Malley*, 898 S.W.2d

> 550, 552-53 (Mo. banc 1995). In particular, an insurer's file for and actions taken on a first-party claim, including its investigations, evaluations, and decision-making processes with respect to whether coverage is or may be available, the claimant insured's damages, or otherwise, are work product and are protected from discovery. See generally *State ex rel. State Farm Mut. Auto. Ins. Co. v. Keet*, 601 S.W.2d 669 (Mo. Ct. App. 1980); *State ex rel. Safeco Nat'l Ins. Co. of Am. v. Rauch*, 849 S.W.2d 632 (Mo. Ct. App. 1993).
>
> Defendant further responded to Request for Production 6, 7, 8, 9 and 16 that they are protected by attorney-client privilege and is beyond the scope of discovery; that the request is overly broad; and seeks documents that are not relevant or reasonably calculated to lead the to the discovery of admissible evidence.
>
> Defendant further responded to Request for Production 15, that the documentation sought is seeks information that consists of and contains trade secrets and/or confidential and proprietary information. Defendant further objects to this Document Request as it is overly broad, seeks documents outside the scope of the pleadings, is not temporally limited in scope, and seeks documents beyond the scope of discovery in that it seeks documents that are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence. See, FRCP 26(b)(1). See also *Jo Ann Howard & Associates, P.C. v. Cassity*, 303 F.R.D. 539 (E.D. Mo. 2014); *State ex rel. Blue Cross & Blue Shield of Mo. v. Anderson*, 897 S.W.2d 167, 169-170 (Mo. Ct. App. 2002).

(ECF No. 29-2). Defendant has not submitted a privilege log.

Plaintiff filed his Motion to Compel arguing that work-product doctrine does not protect materials Defendant prepared before Plaintiff filed the lawsuit against the Defendant; that Defendant should not be able to assert privilege since they have not provided any privilege log; and to the extent that any of the requested materials are protected by the work product doctrine, the Plaintiff has a substantial need for the materials to litigate his claim. Defendant argues that the work-product doctrine applies to the entirety of Plaintiff's claim file and that the Plaintiff has failed to confer with the Defendant and therefore the Motion to Compel should be dismissed.

I. **Failure of the Parties to Confer**

Defendant asserts that the Plaintiff has failed to confer with the Defendant prior to the filing of the instant Motion to Compel and therefore the motion should be denied. (ECF No. 34). Defendant states that the only communication counsel for the Plaintiff made to counsel for the Defendant regarding the discovery dispute was a letter transmitted via email on October 22, 2019 at 4:17 p.m., and that on October 23, 2019 the Plaintiff filed the Motion to Compel. Defendant argues that the letter did not constitute good faith. Plaintiff asserts that communication between counsels has been lacking throughout the litigation process. Plaintiff states that the Parties had been engaging in negotiations, to which Plaintiff provided Defendant a demand on March 14, 2018, and that Defendant failed to respond to any attempts by Plaintiff to follow up. Plaintiff asserts that it was not until September 6, 2018, that Plaintiff received a response from Defendant's adjuster who communicated that there would be no more offers or mediation pre-suit. (ECF No. 36). Plaintiff further asserts that despite responding to discovery requests in August of 2019, the Defendant has yet to provide a privilege log in compliance with Fed. R. Civ. P. 26(a)(5)(A). *Id.* Although local rule 37-3.04 indicates that a letter does not constitute good faith conferral the Court will nonetheless rule on the motion to compel to minimize any additional delay. The Court will therefore turn to the work product doctrine issues raised in this case.

II. **Work Product Doctrine**
   a. **Legal Standard**

District Courts are afforded "wide discretion in [the] handling of discovery matters." *Cook v. Kartrig Pak Co.,* 840 F.2d 602, 604 (8th Cir. 1988). "In cases pending before a federal court based on the court's diversity jurisdiction, federal law applies to resolve claims that the work product doctrine protects otherwise discoverable material from disclosure." *Nunnally v. Stillwater*

*Insurance Company*, 4:18CV00680 PLC 2019 WL 2009617 at *4 (E.D. Mo. May 7, 2019)(citing *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000).

Under the work product doctrine, "documents and tangible things that are prepared in anticipation of litigation for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent)" are protected from discovery. *Nunnally*, 2019 WL 2009617 at *4 (quoting Fed. R. Civ. P. 26(b)(3)(A)). However, a litigant can obtain discoverable items that would otherwise be protected by the work product doctrine if they can show that the materials requested are "substantial[ly] need[ed]… to prepare its case and cannot without substantial undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

"If a court concludes a litigant may obtain material otherwise protected by the work product doctrine, the court 'must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories, of a party's attorney or other representative concerning the litigation.'" *Nunnally*, 2019 WL 2009617 at *4 (quoting Fed. R. Civ. P. 26(b)(3)). The distinction between ordinary work product and opinion work product as described by the Eighth Circuit is:

> There are two kinds of work product – ordinary work product and opinion work product. Ordinary work product includes raw factual information. Opinion work product includes counsel's mental impressions, conclusions, opinions, or legal theories. Ordinary work product us not discoverable unless the party seeking has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud.

*Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000)(internal citations omitted). The party asserting the work product doctrine bears the burden of establishing the doctrine actually

protects material from discovery. *Nunnally*, 2019 WL 2009617 at *4 (citing *In re Grand Jury Proceedings (Malone))*, 655 F.2d 882, 887 (8th Cir. 1981). "[W]hen a litigant withholds otherwise discoverable material based on the work product doctrine, 'the party must: (i) expressly make the claim; and (ii) describe the nature of the documents and communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected , will enable other parties to assess the claim.'" *Id.* citing Fed. R. Civ. P. 26(b)(5)(A). The party "asserting work product privilege must set forth objective facts to support its claim of privilege; a mere conclusory statement that the work product was created in anticipation of litigation is not enough" *Id.* quoting *AAB Joint Venture v. United States*, 75 Fed, Cl. 432, 445 (2007); citing *United States ex rel. Cairns v. D.S. Medical, L.L.C.*, No. 1:12CV00004 AGF, 2017 WL 3887850, at 3 (E.D. Mo. Aug. 31, 2017).

Generally, information supporting a claim that work product doctrine protects material from disclosure is provided by the party asserting the privilege in a privilege log. *See, Nunnally*, 2019 WL 2009617, at *5 citing, *Matter of Am. River Transp. Co.*, No. 4:11CV00523; *Scottrade, Inc.*, 2011 WL 572455, at *3. A "privilege log must 'provide sufficient detail to evaluate' the claim that the work product doctrine protects withheld material from disclosure." *Id.*, citing *Matter of Am. River Transp. Co.*, 2017 WL 747608, at *2. A party may "me[e]t its burden of providing a factual basis for asserting the privilege …[by] produc[ing] a detailed privilege log stating the basis of the claimed privilege for each document in question, together with accompanying explanatory affidavit of its … counsel". *See, Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997).

7

### b. Effective Date for Work Product Doctrine

The parties dispute the date in which the Defendant may assert work product doctrine. Neither party posits a specific date for the work product doctrine should take effect; however, the Defendant argues that the entire uninsured motorist claims file should be protected. Plaintiff asserts that because the parties were in negotiations prior to the instant case being filed, the pre-litigation claims file should not fall into the work product doctrine protection.

The timeline provided to the Court is as follows:

> **October 28, 2015**: date of accident
> **March 14, 2018**: Plaintiff's final demand following a year of negotiations.
> **September 6, 2018**: Defendant's adjuster communicates to the Plaintiff that there will not be any more offers or mediation pre-suit
> **March 5, 2019**: Cause No. 1922-CC00481 is filed in Circuit Court for St. Louis City

In deciding when work product doctrine attaches, the Eighth Circuit has stated that "the work product rule does not … come into play merely because there is a remote prospect of future litigation." *Nunnally*, 2019 WL 2009617, at * 5, quoting *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977), rehearing with respect to attorney-client privilege protection only, 572 F.2d 606 (8th Cir. 1978)(en banc). Whether material was generated in "anticipation of litigation" in accordance with Rule 26(b)(3) is a factual determination. Specifically, "the test should be whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987)(internal quotation marks and citation omitted).

The documents Defendant seeks to protect as work product are those responsive to Plaintiff's discovery requests for: (a) photographs of the accident and information as to who is control of those photographs; (b) statements about the incident including correspondence between the defendant and third parties pre-litigation; (c) information as to who investigated the uninsured motorist claim and whether Gregory Newlon was investigated as an uninsured motorist; and (d) the pre-litigation claims file. Due to the absence of a privilege log, specific information about the withheld material Defendant generated in response to Plaintiff's uninsured motorist claim is not available to the Court for evaluation.

The Court recognizes that "[i]n the insurance context …. 'much of the paperwork generated by insurance companies 'is prepared with an eye toward a possible legal dispute over a claim.''[…] 'Because of this, 'it is important to distinguish between an investigative report developed in the ordinary course of business as a precaution for the remote prospect of litigation and materials prepared because some articulable claim, likely to lead to litigation…has arisen.'"" *Nunnally,* 2019 WL 2009617 at *6 (emphasis omitted). The work product doctrine only applies to material generated by an insurer in response to a claim under a policy it has issued in which a "specific" or "palpable" threat of litigation exists. *Id.*, citing *American Modern Home ins. Co. v. Thomas*, No. 4:16CV215 CDP, 2017 WL 3978369 at *4 (E.D. Mo. Sept. 11, 2017). The "decision to decline coverage is usually the point at which the ordinary course of business ends and the anticipation of litigation begins[.]" *Id.* However, in the absence of a denial, as Defendant asserts is the case here, the Court must determine when a "specific threat" of litigation attaches. In some cases, the Court has looked to the date in which the insurer hired outside counsel. *See, e.g. Medical Protective Co. v. Bubenik*, No. 4:06CV01639 ERW, 2007 WL 3026939, at *4 (E.D. Mo. Oct. 15, 2007). This is particularly true in cases in which counsel is hired soon after Plaintiff's pre-litigation settlement

demands reveal the course of action the insurer is likely to take on the insured's claim. *Nunnally,* 2019 WL 2009617, at *7 citing *Bubenik*, 2007 WL 3026939. The Plaintiff however argues that the pre-litigation claims file should be discoverable as non-work product and that the Defendant cannot assert the privilege prior to the date the case was filed. The Court determines that Defendant's course of action became clear when its adjuster communicated to the Plaintiff that their demand would not be met and there would be no more pre-suit mediation, therefore litigation became more than a mere possibility and became palpable on September 6, 2018. The Defendant may not assert work product doctrine for documentation prior to September 6, 2018.

c. **Subsequent Claims of Work Product Protection**

To the extent that Defendant claims work product protection for the materials responsive to the disputed discovery requests, Defendant is required to prepare a privilege log setting forth both the relevant discovery request to which each withheld item responds and detailed information, without revealing information that is itself privileged or protected, supporting the Defendant's claim of work product doctrine with respect to each item. *See, Nunnally,* 2019 WL 2009617. Defendant shall provide a copy of its privilege log and confer with Plaintiff within ten (10) days of this order to see which, if any, of the withheld materials remain in dispute. If the parties are unable to resolve their disputes regarding material withheld by Defendant as work product, the Plaintiff may file an additional motion to compel seeking disclosure of the disputed materials.

Additionally, Plaintiff argues that the Court should require disclosure of material Defendant has withheld as work product based on her substantial need for the material in light of the vexatious refusal to pay claim. Defendant argues that the Plaintiff has failed to make a proper showing of substantial need. When there is a claim for vexatious refusal to pay "'there is often a

substantial need by the insured for discovery of information in the insurer's claims file.' […] However, an insured's 'mere pleading of vexatious refusal to pay… does not itself create a substantial need for an insurer's internal documents.' While the showing required for an insured to demonstrate a substantial need for ordinary work product material is 'not a high hurdle,' an insured claiming vexatious refusal 'must demonstrate some likelihood of probability that the documents sought may contain evidence of bad faith.'"  *Nunnally,* 2019 WL 2009617, at *11. Plaintiff argues that there is a possibility of bad faith because Plaintiff submitted specials and a letter from a neurosurgeon that demonstrated the Plaintiff's need for surgery far exceeded the damages reflected in Defendant's top offer. Furthermore, Plaintiff argues that bad-faith is likely present because it took the Defendant six-months to respond to Plaintiff's counter-demand. (ECF No. 36). While the facts raised by the Plaintiff may give rise to an inference if of bad-faith, the Court does not have a privilege log to make a clear determination in this case. Therefore, the parties are ordered to confer following Defendant's submission of their privilege log to the Plaintiff to resolve their discovery disputes.

### III. Plaintiff's request for Policies and Procedures

Plaintiff has requested information regarding the Defendant's policies and procedures. Defendant asserts that the documents requested are trade-secrets and confidential proprietary information and therefore should not be discoverable. The reasonableness of Defendant's handling of Plaintiff's claim is the main inquiry in Plaintiff's vexatious refusal to pay claim. The procedures by which Defendant ordinarily handles claims is therefore relevant to the inquiry. *See, Russel v. Farmers & Merchants Ins. Co.*, 834 S.W.2d 209 (Mo. App. S.D. 1992). To the extent that Defendant claims that the relevant documentation is trade-secret or proprietary, the Plaintiff has offered to enter a protective order with regard to this information. Therefore, the parties will confer

about an appropriate protective order to submit to the Court with regard to any materials withheld solely on the basis of being a trade-secret of proprietary information.

**[THE REMAINDER OF THIS PAGE HAS INTENTIONALLY BEEN LEFT BLANK]**

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Plaintiff's Motion to Compel (ECF No. 29) is **DENIED without prejudice.**

**IT IS FURTHER ORDERED** that the Defendant has ten (10) days from this order to submit a detailed privilege log to the Plaintiff regarding the discovery in dispute.

**IT IS FURTHER ORDERED** that upon submission of the privilege log the Parties will meet and confer regarding the disputed discovery and the parties will confer about an appropriate protective order to submit to the Court with regard to any materials withheld solely on the basis of being a trade-secret of proprietary information.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Extension of Plaintiff's Expert Disclosure Deadline. (ECF No. 31) is hereby **GRANTED** and the Case Management Order (ECF No. 25) is amended as follows:

(a) The Plaintiff shall disclose all expert witnesses and shall provide the reports required by Rule 26(a)(2), Fed. R. Civ. P., no later than **January 3, 2020**, and shall make expert witnesses available for depositions, and have depositions completed no later than **February 3, 2020**.

(b) Defendant shall disclose all expert witnesses and shall provide the reports required by Rule 26(a)(2), Fed. R. Civ. P., no later than **February 18, 2020**, and shall make expert witnesses available for depositions, and have depositions completed no later than **March 19, 2020**

Dated this 13th day of November 2019.

/s/ Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT COURT